O

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | |
|---|---|
| **MANUEL AMADOR VELASCO** § | |
| § | |
| *Plaintiff,* § | |
| VS. § | CIVIL ACTION NO. 5-08-cv-114 |
| § | CRIMINAL ACTION NO. 5:04-cr-102 |
| § | |
| **UNITED STATES OF AMERICA** § | |
| *Defendant.* § | |

## OPINION & ORDER

Pending before the Court is Manuel Santiago Amador-Velasco's ("Amador-Velasco") Motions to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. §2255, [Dkt. No. 1, 3],[1] which the Court deems filed on August 14, 2008[2] and September 15, 2008[3] respectively**.** The Court concludes that it is not necessary to order the Government to respond to the §2255 Motions because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. § 2255, Proc. R. 4(b); *see also United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). Having duly considered the petitions, supporting memorandum, and applicable law, Velasco's petitions are DISMISSED with prejudice.

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in case number 5:08-cv-114. Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:04-cr-102. Citations to "Minute Entries" will be used to refer to entries made for criminal case number 5:04-cr-102.

[2] Although the Clerk received Amador-Velasco's first motion on August 20, 2008, it is dated August 14, 2008. Thus, August 14, 2008 is the earliest date it could have been delivered to prison authorities for filing, the pertinent date for deeming a document filed by a *pro se* prisoner under *Houston v. Lack*, 487 U.S. 266, 276 (1988). *See United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992). The Court deems the petition filed as of the earlier date.

[3] The Clerk received Amador-Velasco's second motion on September 29, 2008. The motion is dated September 15, 2008, and the accompanying Memorandum of Law is dated August 18, 2008. The Court deems the Motion as filed on September 15, 2008, the earliest date it could have been delivered to prison authorities for filing. *See Young,* 966 F.2d at 165.

I.      **FACTS AND PROCEEDINGS**

On January 21, 2004, a federal grand jury in Laredo, Texas indicted Amador-Velasco in criminal case number 5:04-cr-102 of: (1) conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846, 841(a)(1), and 841(b)(1)(A); and (2) possession with intent to distribute in excess of five kilograms of cocaine in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A), and Title 18, United States Code, Section 2. [*See* Cr. Dkt. No. 1]. On April 14, 2004, a jury found Amador-Velasco guilty of both counts. [Cr. Dkt. No. 29]. Subsequently, on July 15, 2004, Judge Ginger Barrigan sentenced Amador-Velasco to 151 months incarceration, followed by five years of supervised release. [Cr. Dkt. No. 37]. Oscar J. Pena, Jr. represented Amador-Velasco at his trial and sentencing.

On direct appeal to the U.S. Court of Appeals for the Fifth Circuit, Amador-Velasco's conviction and sentence were affirmed. [Cr. Dkt. No. 69, 70]. On August 14, 2008, Amador-Velasco filed the first §2255 Motion now before the Court, [Dkt. No. 1], and an accompanying Memorandum of Law. [Dkt. No. 2]. Amador-Velasco frames his claims in this case in terms of ineffective assistance of counsel at his sentencing. Amador-Velasco states, ". . . Mr. Amador essentially had no advocate during his sentencing proceeding, because Mr. Pena did nothing on movant's behalf to argue for a lower sentence." *Id.* at 5. Specifically, Amador-Velasco first contends that his attorney should have moved for a so-called "safety valve" sentence adjustment pursuant to 18 U.S.C. 3553(f). *Id.* at 12. Second, Amador-Velasco asserts that his attorney should have argued that Petitioner should receive a reduction for "play[ing] only a minor role in a jointly undertaken criminal activity" under U.S.S.G. § 3B1.2. *Id.* at 12-14. Interwoven in these two arguments Amador-Velasco also contends that his attorney failed to object to the pre-

sentence report. *Id.* On September 15, 2008, Amador-Velasco filed a second §2255 motion. [Dkt. No. 3]. In this second motion, Amador-Velasco argues that his counsel provided ineffective assistance of counsel for the exact same reasons as stated in his first petition. Indeed, Amador-Velasco's Memorandum of Law in his second motion is identical to that of his first motion. [Cr. Dkt. No. 62].

## II.   JURISDICTION

The Court has jurisdiction over Amador-Velasco's first Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. §2255. Amador-Velasco's August 14, 2008 motion is timely because it was filed within one year of the date on which his judgment of conviction became final, i.e., the time in which Amador-Velasco could have sought direct appeal from the Fifth Circuit to the United States Supreme Court. *See* 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that if a federal defendant appeals his conviction to the court of appeals and then does not seek certiorari to the Supreme Court, the conviction becomes final when the 90-day period expires during which the defendant could have filed a petition for certiorari).

Amador-Velasco's second Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (the September 15, 2008 motion) may be considered a successive motion to vacate that requires a panel of the Fifth Circuit to approve its filing. The Antiterrorism and Effective Death Penalty Act (AEDPA) limits when a federal prisoner may file a second or successive motion to vacate. *See United States v. Orozco-Ramirez*, 211 F.3d 862, 867 (5th Cir. 2000). Under Fifth Circuit precedent, a subsequent motion is "second or successive" when it raises a claim that challenges the movant's conviction or sentence that could have been raised or was raised in an earlier motion to vacate. *Id.* The Fifth Circuit in *Orozco-Ramirez* noted:

> The requirement that all available claims be presented in a prisoner's first habeas petition is consistent not only with the spirit of AEDPA's restrictions on second and successive habeas petitions, but also with the preexisting abuse of the writ principle. The requirement serves the singularly salutary purpose of forcing federal habeas petitioners to think through all potential post-conviction claims and to consolidate them for a unitary presentation to the district court.

*Id.* (quoting *Pratt v. United States*, 129 F.3d 54, 61 (1st Cir. 1997). Here Amador-Velasco raises the exact same claims that he raised in his first motion—ineffective assistance of counsel for failure of his counsel to move for a minor role or "safety valve" adjustment. [Dkt. No. 2, 3]. Because the motion raises the same claims as in his first motion, the Court will consider both filings to constitute one motion.

## III. LEGAL STANDARD

### A. 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). After conducting an initial examination of the petition, the Court must dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." 28 U.S.C. § 2255, Proc. R. 4.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). Moreover, "the right to counsel is the right to the effective assistance of counsel." *Id.* at 686. (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). In order to merit post-conviction relief due to ineffective assistance of counsel, Amador-Velasco must demonstrate that (1) counsel's performance was deficient and (2) that the petitioner suffered prejudice as a result. *Id.* at 687; *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See id.*; *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). Thus, a court does not have to analyze both components of a claim of ineffective assistance of counsel if the movant has made an insufficient showing as to one prong. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

Under the "performance" prong, counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In assessing whether counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Under the "prejudice" requirement, Amador-Velasco must show a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. *Id.* at 689. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice

rendered sentencing 'fundamentally unfair or unreliable.'"  *Crane v. Johnson*, 178 F.3d 309, 312-313 (5th Cir.), *cert. denied*, 528 U.S. 947 (1999) (quoting *Ransom v. Johnson,* 126 F.3d 716, 721 (5th Cir.), *cert. denied*, 522 U.S. 944 (1997)).

### IV.   Discussion

Prior to analyzing Amador-Velasco's ineffective assistance of counsel claim, the Court notes that Amador-Velasco's Motion to Vacate essentially represents an attempt to challenge Judge Barrigan's application of the Sentencing Guidelines.  A movant may not collaterally attack a court's application of the Sentencing Guidelines in a §2255 proceeding if the movant could have raised this challenge on direct appeal.  *United States v. Perez*, 952 F.2d 909, 909-10 (5th Cir. 1992).  Further, a claim based on the misapplication or miscalculation of the Sentencing Guidelines is not a constitutional claim under §2255.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citations omitted) (explaining misapplications of the Sentencing Guidelines are not cognizable in §2255 motions); *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (holding "a district court's technical application of the Sentencing Guidelines does not give rise to a constitutional issue cognizable under section 2255").  Therefore, to the extent Almador-Velasco's attempts to directly challenge the Court's sentence, the Court finds it should summarily reject his claim.  However, to the extent that Amador-Velasco alleges his 151-month sentence resulted from ineffective assistance of counsel, the Court will examine the merits of Amador-Velasco's claims.

####   A.   Minor Participant Eligibility Claims

Amador-Velasco argues that his attorney was ineffective for failing to object to the Pre-Sentence Report that he qualified for minor participant status, and for failing to argue that Amador-Velasco was at best a minor participant.  [Dkt. No. 2 at 12-14].

Section 3B1.2 of the United States Sentencing Guidelines permits a two level reduction in a defendant's total offense level if the defendant was a "minor participant" in the criminal activity for which the defendant is being sentenced. U.S. Sentencing Guidelines Manual § 3B1.2(b) (2004). The Fifth Circuit has stated that "[a] downward adjustment under section 3B1.2 is generally appropriate only where a defendant was '*substantially less culpable* than the average participant.'" *United States v. Brown*, 54 F.3d 234, 241 (5th Cir. 1991) (quoting *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989) (emphasis in original)); *see also* U.S.S.G. § 3B1.2, Background Note. The defendant bears the burden of proving that his role in the offense was minor or minimal." *United States v. Atanda*, 60 F.3d 196, 198 (5th Cir. 1995) (citing *United States v. Brown*, 7 F.3d 1155, 1160 n.2 (5th Cir. 1993)). In determining whether a defendant's participation was minor, the court must consider the broad context of the defendant's crime. *Id.* (citing *Buenrostro*, 868 F.2d at 138 (5th Cir. 1989)); *United States v. Mejia-Orosco*, 867 F.2d 216 (5th Cir.), *cert. denied*, 492 U.S. 924 (1989).

Amador-Velasco claims the evidence shows his role in the offense was minor. He alleges that a Mr. Becerra recruited him to smuggle U.S. currency between Mexico and the United States; there was no mention of cocaine. By acting only as a courier, Amador-Velasco reasons he played only a minor role. Case law, however, does not support Amador-Velasco's reasoning or interpretation. *See United States v. Lujan-Sauceda,* 187 F.3d 451, 452 (5th Cir. 1999); *Buenrostro*, 868 F.2d at 137-38.

In *Buenrostro*, the Fifth Circuit, held that a district court did not commit clear error in not awarding a § 3B1.2 reduction to a one-time courier of heroin who smuggled the heroin just after being asked by a few men he had just met at a bar. 868 F.2d at 137-38. The Court of Appeals further explicated:

> "[E]ven if the defendant were purely a courier having no knowledge of the other aspects of the drug-dealing operation, the defendant might nonetheless be a highly culpable participant in the operation. A courier who willingly undertakes illegal transit without asking many questions is especially valuable to a criminal organization. When police apprehend a studiously ignorant courier the organization can rest comfortably, knowing that its other operations remain hidden from the law. *Id.*

Similarly, in *Lujan-Sauceda*, the Fifth Circuit stated that neither a defendant's status as a first time offender nor his claims to be a courier require an adjustment under § 3B1.2 for minor participant status. 187 F.3d 451, 452 (5th Cir. 1999).

In light of this Fifth Circuit precedent, Amador-Velasco's minor participant argument fails. It fails because the Fifth Circuit has considered and rejected the argument Amador-Velasco puts forth here—that courier status stemming from a single drug smuggling transaction done in ignorance of its contents should qualify a defendant for a minor role downward sentencing adjustment. *See Lujan-Sauceda*, 187 F.3d at 452; *Buenrostro*, 868 F.2d at 138-39; *see also Espinosa v. United States*, No. EP-05-CA-309, 2008 WL 557959, at *4 (W.D. Tex. Feb. 27, 2008) (explaining that even though defendant obtained an agreement from the government to recommend minor role reduction, the court need not follow that recommendation in light of *Lujan-Sauceda* and *Buenrostro*); *United States v. Granados-Vaquiz*, No. 04-cv-670, 2006 WL 1709961, at *5 (S.D. Tex. June 14, 2006). Also, Amador-Velasco has produced little evidence in connection with his motion to satisfy his burden of establishing that he played a minor role in the offense. *Atanda*, 60 F.3d at 198.

Because the Fifth Circuit has rejected arguments similar to Amador-Velasco's minor role argument, counsel cannot be faulted for failing to object or to move for a downward adjustment on this ground. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)) ("Counsel cannot be deficient for failing to press a

frivolous point."). Under these set of circumstances, Amador-Velasco has not demonstrated that his counsel's conduct fell below an objective standard of reasonable service. *See Lujan-Sauceda*, 187 F.3d at 452; *Atanda*, 60 F.3d at 198; *Buenrostro*, 868 F.2d at 138-39. As a result of Amador-Velasco failing to satisfy the "performance" *Strickland* prong, it is unnecessary for the Court to consider prejudice. *Stewart*, 207 F.3d at 751; *see also Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995). Therefore, Amador-Velasco is not entitled to relief on this claim.

### B. The "Safety Valve" Issue

Amador-Velasco next argues that his counsel was ineffective because counsel did not object to the Pre-Sentence Report that Amador-Velasco qualified for a safety valve two-level downward departure. Amador-Velasco also asserts that his counsel should have raised the "safety valve" at sentencing. [Dkt. No. 2 at 9-12].

The United States Sentencing Guidelines' "safety valve" provision permits a court to issue a sentence below the mandatory minimum if the defendant meets five criteria. *United States v. Ridgeway*, *abrogated on other grounds*, 321 F.3d 512, 515 (5th Cir. 2003); *United States v. Flanagan*, 80 F.3d 143, 146-47 (5th Cir. 1996). To be eligible for the safety valve, U.S.S.G. § 5C1.2 requires that a defendant demonstrate: (1) he does not have more than one criminal history point; (2) he did not use violence or threats of violence or possess a weapon during the offense; (3) his offense did not result in death or serious bodily injury to any person; (4) he was not an organizer, leader, or other major participant in the offense; and (5) that not later than the time of his sentencing hearing, he has truthfully provided to the government all information and evidence he has concerning the offense. U.S.S.G. § 5C1.2; *see also* 18 U.S.C. § 3553(f)(5); *United States v. Rodriguez*, 60 F.3d 193, 196 (stating the safety-valve provision allows less culpable and less knowledgeable defendants who have fully assisted the government

by providing all of the information they know to avoid application of statutorily mandatory minimum sentence).  The defendant has the burden to show that he has satisfied all five of the safety-valve factors and that the information he provided was truthful.  *Flanagan*, 80 F.3d at 146-47.

Amador-Velasco meets the first four criteria; therefore, the Court focuses on the fifth criterion.  Amador-Velasco in his § 2255 memorandum, states that ". . . on the date of his arrest, [he] disclosed to the DEA agent who interviewed him at the immigration checkpoint near Laredo, Texas, all that he knew about the crime . . . . On the stand, Mr. Amador offered almost the exact word-for-word testimony . . ." [Dkt. No. 2 at 10].  Nonetheless, Amador-Velasco's contention that he should have received a safety valve adjustment as a result of this help if his lawyer had argued for it is unsubstantiated.  Based on a review of the record, no evidence exists that Amador-Velasco satisfied the fifth requirement for safety valve relief, i.e., that he truthfully debriefed to the government prior to sentencing.  The Pre-Sentence Report does not state that Amador-Velasco ever debriefed with the government.  Moreover, a debriefing session by the government would have been futile.  At the time of sentencing, Amador-Velasco continued to assert that he did not know that he was transporting drugs, an essential element of conspiracy to possess with intent to distribute and possession with intent to distribute in excess of five kilograms of cocaine of which the jury convicted him.[4]  At sentencing, when the Court asked Amador-Velasco if he had anything to say, Amador-Velasco gave a vague statement:

---

[4] Judge Keith Ellison at trial instructed the jury as to Count One:
> Title 21, United States Code, Sections 841(a)(1) , and 846 make it a crime for anyone to conspire with someone else to commit a violation of certain controlled substances laws of the United States.  In this case the defendant is charged with conspiring to possess with intent to distribute a quantity in excess of 5 kilograms of cocaine, a Schedule II controlled substance.  Money is not a controlled substance within the meaning of this law. . . . For you to find the defendant guilty of conspiring to possess with intent to distribute a controlled substance, you must be convinced the government has proved each of the following beyond a reasonable doubt: First, that two or more persons directly or indirectly reached an agreement to possess with intent to distribute a controlled

> And this mistake was not a direct cause on my part. This is the truth. And I am very sad and very embarrassed because I bit the hand of this great country. Even though it was not directly it was not my fault . . . And here are my hands. These have always been hands of work, which has been honorable work. And for that situation, because of that situation, I wish to appeal.

[Sentencing Tr. at 4]. Amador-Velasco's lawyer then explained to the Court this statement was an oblique reiteration of his defense at trial that Amador-Velasco did not know there was cocaine located in a hidden compartment in his vehicle. Specifically his counsel stated:

> It was his position at trial that he was hoodwinked into thinking that he was coming to the U.S. to pick up some funds which . . . was supposed to be put in a secret compartment. And that was in the car that he was driving. That was his testimony at the trial and that is why he talks about his not being directly responsible for what happened, because his position was, "I thought that the secret compartment was empty. I was coming to the U.S. to pick up money and I had no knowledge of the fact there was cocaine in that compartment."

[Sentencing Tr. at 4-5]. This colloquy demonstrates that Amador-Velasco would not truthfully have provided the Government with all relevant information concerning the offense because he continued to deny knowledge of the cocaine. *See* U.S.S.G. § 5C1.2(a)(5); 18 U.S.C. § 3553(f)(5); *United States v. Flanagan*, 80 F.3d 143, 146-47 (5th Cir. 1996). The jury's guilty verdict necessarily means Amador-Velasco did have the requisite knowledge. Therefore, Amador-Velasco has failed to show that the Court would have granted him a safety valve

---

> substance. Second, that the defendant knew of the unlawful purpose of the agreement. Third, that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; and Fourth, that the overall scope of the conspiracy involved at least 5 kilograms of cocaine. . . .

[Trial Tr. Vol. II, at 70-71]. Judge Ellison instructed the jury as to Count Two, possession with intent to distribute:
> For you to find the defendant guilty of this crime, you must be convinced the government has proved each of the following beyond a reasonable doubt: First, That the defendant knowingly possessed a controlled substance; Second, That the substance was in fact cocaine; Fourth, that the quantity of substance was at least five kilograms . . . The government is not required to show that the defendant knew that the substance involved was cocaine. It is sufficient if the evidence establishes beyond a reasonable doubt that a defendant knowingly possessed some controlled substance with the intent to distribute it . . . .

[Trial Tr. Vol. II, at 72-73].

reduction if his counsel had moved for one.  *See United States v. Edwards*, 65 F.3d 430, 433 (5th Cir. 1995) (denying application of § 5C1.2 because the defendant provided conflicting accounts of the offense); *see also United States v. Fo,* 226 Fed. Appx. 346, 346 (5th Cir. May 14, 2007) (upholding district court's determination that defendant did not establish eligibility for safety-valve reduction where he did not admit his involvement in drug conspiracy extended beyond two kilograms he admitted to); *United States v. Madrigal*, 215 Fed. Appx. 365, 366 (5th Cir. Feb. 2, 2007) (upholding district court's finding that defendant's story that stranger sought him out randomly to transport marijuana for $10,000 was implausible).  Had Amador-Velasco's counsel moved for safety valve relief, he would not have received it.  Therefore, Amador-Velasco was not prejudiced under the *Strickland* test by his counsel's failure to move for safety valve relief, and thus, his claim for ineffective assistance of counsel fails.  *See Strickland*, 466 U.S. at 697 (noting a court may dismiss an ineffective assistance of counsel claim if petitioner's allegations fail to demonstrate the complained-of error affected the outcome of the case).

## V.  CONCLUSION

Petitioners' Motions to Vacate, Set Aside, or Amend Judgment are **DISMISSED WITH PREJUDICE**.  Any future request for a certificate of appealability is **DENIED**.

IT IS SO ORDERED.

DONE this 22nd day of October 2008, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE